The last case up this morning is LHO Chicago River v. Perillo. Good morning. Good morning, Your Honor. May it please the Court, it's an honor to be here. This case is relatively simple. Five years ago, Octane was decided unanimously by Justice Sotomayor. And ever since, that case has trickled down to every circuit. Every circuit has been unanimous so far. This case applies to trademark law because the language of the statutes between the patent statute and the trademark statute are identical, mostly. What is very important is, Octane, when we read it and we look at what it was, I just want to bring forth one little detail about Octane that was in the briefs that we provided with that. Here, a plaintiff, the Court noted at footnote five how evidence was presented about vice presidents who misused the process, who here they say that they sued essentially with a patent that was on the shelves, didn't have a good case. They attacked, and they were defeated at summary judgment. And as a result of that, the Court, the Supreme Court said, well, there was no bad intent here. There was no bad fate. But still, the case was extremely weak. And because this patent case was extremely weak, we are going to send back, and we are going to, this case may be exceptional under the definitions. They provided us very clear definitions. Here in this case, the same thing happened. There were e-mails that were uncovered, and Judge Kokoris noted it in his decision. And he did say that, however, there were some e-mails discovered from the plaintiff that says that they cannot trademark the word Hotel Chicago. That's how weak it was. Nevertheless, the same thing. They went ahead, and they attacked, and they lost. And they lost on a case that was so weak that the judge found that there was not a mere possibility of victory here. Would the outcome have been different if the Actane standard had been applied as opposed to the Burford standard? No. I think here it's very simple. Is this case exceptional? Would a reasonable attorney, seeing this mark, arrive in a client that says, I don't have any trademarks? The other side has filed for something, but we don't. The other side has Hotel Chicago LLC, a DBA. We don't have anything. This hotel, by the way, had been rebranded several times. It was the Saks Hotel. It was the House of Blues Hotels. This case was so inherently weak, and that's what we're saying. We're saying that the Supreme Court says, well, if there's bad faith, you may get attorney's fees. The case may be exceptional. But also, in some rare cases, someone will have the temerity to bring forward a case that is incredibly weak. Here, Hotel Chicago, you go in a cab, you say, I want to go to Hotel Chicago. They don't know where they're going. So our point was here, in the request for fees to judge, judge, of course, did his best, but he was fighting with multiple different points, and he ended up getting it wrong. So he needs guidance from this court. Well, you know, he's tried a lot of cases. He has done a wonderful job. Yeah, and I can't get in his chair, but it does seem that he heard everything and then concluded that this doesn't qualify, and even though it's not much of a case and they backed off of it and everything else. That's why I have a little problem with that. That's all. Just because of a judge doing that for a long time, and then he determined that it wasn't, didn't get to the level of an abuse. Oh, the abuse standard, we have not appealed. Okay, don't let me use the word then. What standard are you talking about? The rule is totality of the circumstances, so everything. The test is very broad. And so one thing the judge has not factored in, and we tried, is that not all trademarks are created equal. Some trademarks are weak. Some trademarks are strong. Same thing with patent cases. Some patent cases, when we assert them, we have a strong case, and some patent cases, when we assert them, they're very weak. It's very difficult to see at a glance from a distance. The advantage with trademark law is trademark law defines what a weak trademark is and what a strong trademark is. Here, in the opinion, Judge Krokoros didn't mince his word. When he said they had yet to enlist and they have an uphill battle, he called it the so-called mark. He went out of his way 30 times in this opinion to not call this a mark and say they didn't have any rights here. They attacked without any rights. And honestly, this was as low and as weak a case as possible. Are you saying that he got the application of the standard wrong or that he applied the wrong standard? I thought you were arguing he should have followed the Supreme Court's case in Octane and applied that standard rather than applying the standard in Burford. Exactly. The Supreme Court says that there's really two ways to get fees. One is if there is an abusive process or there's bad faith in litigation or someone did something morally incorrect or culpable. But there's also, in IP rights, there's this notion that a case may be exceptional and stand out from the other if it's extremely weak. If it's very, very weak on the merits, the mark is very weak, the patent is very weak. If a patent is almost invalid for glaring reasons on its face and someone asserts a case like that, the judge did not use the Octane test. He just used the old Burford test. And Burford was a completely different case. It was the counterclaims that were being brought that were dismissed. They never reached the merits, and the appeals court struggled with that issue. But Burford was a Lanham Act case. The facts may have been different, but the legal statute that they were using to recover under was the same. Absolutely, absolutely. But the merits were never really reached below. So the judge never really said, this is an extremely weak case, and this is an extremely weak trademark. In this case, on appeal, the parties talked about that. I'll reserve my time. Thank you. Ms. Wilbert? Thank you. Rosemore has identified nothing that makes this an exceptional case under any applicable standard. LHO filed suit for trademark infringement because it was experiencing actual confusion in the market because another hotel two miles away was using the same trademark. This is why this case was brought, not for any other reason. When analyzing the high threshold for a preliminary injunction, two judges disagreed about whether a preliminary injunction should be granted. That the magistrate recommended granting the injunction indicates that the merits were subject to reasonable disagreement and that the parties had genuine substantive issues to develop during discovery and try at a trial. In looking at the question of fees and the standard to apply to whether or not to award fees, which is what's before the court, are you arguing that this court previously rejected the application of octane in Burford? No, this court was silent as to the application of octane in Burford.  Under any standard, we believe this case is not exceptional. So this court does not need to make new law to resolve this issue because under the facts of this case, even applying octane, it's not exceptional. Do you agree that octane should apply here given that the Supreme Court addressed it? I know it's the Patent Act rather than the Lanham Act, but the language is identical, and we have said and the court has said they should be looked at similarly. I think looked at similarly is a good phrase. I believe that octane correctly applied is persuasive authority but not controlling authority because as Judge Posner noted in the Nightingale case, the trademark statutes, the Lanham Act, provide different policy considerations that are not present in other statutes. So the Patent Act is, in fact, different from the Trademark Act, and there are different policy considerations. But the fee statute is identical in both. It is, and that's why octane fitness can be persuasive. But under the octane fitness standard, there is no reason to grant fees in this case. Is that something we can decide if we determine that octane controls rather than Burford, which I agree didn't address the question? Can we make the determination as to the applicability of that, or is that something we'd have to send back to the district court to do? Yes, you can make the determination. I'd like to draw the court's attention to page 12 and 13 of Rosemore's reply brief. There, Rosemore says that they are, defendants have not appealed any of the factual conclusions. And here on this record, the district court has actually made a number of conclusions about the merits of the case. Specifically, if I could draw your attention to Appendix A115, the district court judge in the hearing transcript noted that I do not agree the claim was baseless. Also, in addressing the e-mails, the judge specifically addressed the e-mails on page A51 and noted while these e-mails do give some reason for pause, the court gives credence to LHO's explanation and finds that the complaint was not filed as an abuse of process. Because there are these factual findings and because Rosemore is not challenging them, that allows this district court to evaluate the factual conclusions that were made below and affirm finding that this is not an exceptional case, even under Octane Fitness. And that type of an analysis is actually appropriate because the court in Octane Fitness employed courts to apply a case-by-case exercise of their discretion, considering the totality of the circumstances, including observations made while living with the case. This language about living with the case recognizes that a district court judge is in the best position to make factual findings. And here, the district court judge concluded that this case was not an abuse of process. In fact, when analyzing this issue, the district court judge noted that LHO's participation in mediation signaled an intent to end the litigation, not needlessly prolong it. These are factual findings that the court can rely on, and this just simply is not an exceptional case under any standard that could be applied. I guess in applying Octane or Burford, is there a difference that needs to go back for the court to apply Octane, for example? No, there's not, because under the facts of this case before us, there have been factual determinations that are not being challenged on appeal. So this court has a complete record and can rely on the factual determinations made by the district court, even if the Seventh Circuit were to change the legal standard to be applied. The point is, because the facts have already been determined, under Burford or Octane Fitness, the information is available, and this opinion should be affirmed because there is simply no evidence that there was a bad faith motive, no evidence that this case is exceptional. Ms. Gilbert, are there any circuits that have specifically addressed the question of whether or not Octane applies to fee determinations of the Lanham Act that have rejected that application? Where they've specifically addressed the question? I'm sorry, I'm not following your question about where you said where they had rejected the application. The application of what? Of Octane. So there are circuit courts that have addressed the question of whether or not the standard set forth in Octane should also apply in Lanham Act cases. Correct. Have any of those circuits where that question has been raised said, no, we don't think Octane applies to Lanham Act cases, it only applies in the Patent Act? I don't know the answer exactly, but I do know that there are some circuits, like the Fifth Circuit, that have classified Octane as directly concerning the Patent Act, but guiding the interpretation of the Lanham Act. So they describe Octane more as a guide or persuasive authority, not necessarily using the language controlling. But the Fifth Circuit went on to then use that standard. Correct. And I would note that the district court here seems to have done something similar in that the district court itself cites Octane, but then goes on to apply Burford, which is more specifically on point. And as this court has held, unless the Supreme Court speaks specifically to an issue of law, the Seventh Circuit authority applies. So the district court acknowledged the Supreme Court decision in Octane and went on to apply the specific Seventh Circuit's decisions that were the controlling law at the time. And that simply isn't an abuse of discretion. Moreover, the reason that the district court may have relied on these cases and why it was actually not an abuse of discretion for the district court to do so is that Rosemore itself told the court at the time that that was the law. In its brief to the district court at Appendix R23, Rosemore reassured the court and said, I quote, Many courts, including this one, still apply pre-Octane fitness standards for fee awards. And then Rosemore cited this court's Nightingale decision. The court does not abuse its discretion by applying cases that the moving party asks it to consider. And I think this quote actually goes to your question about how other circuits have handled it. There are a number of courts that still apply the pre-Octane standards for fee awards. They just look at Octane as persuasive or instructive. The district court properly exercised its discretion in denying fees for a number of reasons. First, there is simply no evidence that this case was brought for an improper motive.  Which if we step back and look at the policy of trademark law, trademark law is intended to prevent consumer confusion. The whole idea of a trademark is that so somebody can walk in a grocery store and quickly identify the box of Cheerios and understand the quality of the ingredients that they're getting. So when there's actual confusion in the market, that's an important indication that there could be trademark infringement. And here, the record below is filled with examples of actual confusion. LHO offered evidence of confusion from 17 customers. Rosemore's own witnesses admitted that consumers had called Rosemore's hotel, believing they were speaking to LHO's hotel. Such references can be found at Appendix A34 and also at Appendix A80. Moreover, in issuing the decisions on fees, the same district judge that found LHO was not entitled to a preliminary injunction also found that Rosemore was not entitled to fees. And in so doing, he noted that he did not agree that the claim was baseless. That's the district court's factual finding here. Your timing is beautiful. I'm sorry? I said your timing is beautiful. Oh, well, thank you. We'd like to ask for an affirmance. Thank you. Thank you. Anything further? Yes, Your Honor. One of the issues is if in trademark law you decide to sell cell phones and call them cell phones, you are going to create confusion. There is a case from the Seventh Circuit, Platinum, the Platinum case, which we are the only circuit where we had a common law, a plaintiff who had Platinum for mortgage services that was the same factors, the same issue with some confusion. Every factor was identical. And so there was a Seventh Circuit case here that clearly said they had no case. They disregarded this case, and they filed a hit. What's important is the strength of a case. Octane clearly says if you have a trademark and you're asserting a trademark, the nature of this trademark, in this case, Hotel Chicago. The point is if you're coming to the marathon and you're typing on Google, you're putting Hotel Chicago because you want a hotel in Chicago. It's generic. It doesn't work. It is not a trademark. The judge found that. In regards to getting fees, when she said we made some arguments, we tried, we argued that there was an abusive process. The judge said no. We respect that. We respect. We did not appeal this, even though we disagree with the judge, of course. But we did not appeal. But what we said was the judge, in his brief, in the award of fee, omitted one thing, which is to take into consideration the strength of their case. They had no case. They didn't meet the mere possibility of victory. They didn't do a survey. They didn't get testimony evidence. They could have done that. At any moment in time, when they lost at an injunction standard, they could have gone out, paid, and do a survey. They didn't do one because they realized that nobody in Chicago knows Hotel Chicago. They don't know where it is. And so all this to say that the notion that she came here and she explained that there was no abusive process, that is not Octane. Octane says maybe there is no abusive process, but if the party filing a case has an extremely low and weak case, then that case may be considered to be exceptional under the Octane test. Otherwise, that's what Justice Sotomayor said, if that wasn't the case, the statute would be rendered a moot. There would be no purpose. Thank you. Thank you. We'll take the case under advisement. That concludes court for this morning.